Brooke, J.
I concur with the president in the opinion he is about to deliver; and I concur also in the-opinions of Judge Carr and Judge Brockenbrough, (delivered on the first argument of this case,) upon the-act of limitations. That act, as regards slave property, has been often applied to the right as well as the remedy. Bive years possession has been held not only to protect the right of a defendant, but to entitle a plaintiff to recover the slaves, even against one having a prior title. In the case before us, to hold that such a possession will not protect the property against the creditor of the donor, would be to prefer the right of" the creditor to the right of the true owner; which I think would be (where there is no lien on the property)to prefer the less to the greater right, and violate the object of the act of limitations; especially in a case in which the rights of the defendants accrued more than 27 years before the filing of the bill.
Tucker, P.
I have carefully reconsidered this case, and re-examined the opinion I delivered at the former-hearing, (to which I beg leave to refer,) and I find no- *181 reason to depart from the conclusion at which I then •arrived. My mind has been fortified in the belief that a fraudulent donee, sued at law as executor de son tort, -cannot protect himself by the statute of limitations by way of plea, but that he may do so by moving an instruction to the jury to presume from lapse of time that every thing was fair. For if, to the plea of ne ■ungues executor, the plaintiff replies that the defendant had administered by taking possession of the property of the deceased, the question at once arises whether it was the decedent’s estate, and this would depend upon the question whether the conveyance impeached was or was not fraudulent; and in the decision of this question a jury ought, after great lapse of time, to presume every thing to have been right. And if the donee could so protect himself at law, it would seem a fortiori, that where, as in this case, the length of time is relied •on in equity, he should receive its protection. It is perfectly well settled that in case of an actual fraud, the statute of limitations is a good bar, both at law and in equity, or rather it operates as such in equity, by analogy to its effect at law. "Why then should a mere constructive fraud, implied from transactions oftentimes most praiseworthy and amiable, be denied the protection of a pi’inciple which has been established "by the legislature, and followed by the chancellors, for the purpose of protecting rights long uninterruptedly enjoyed, and for discountenancing that greatest mischief to the republic, the hunting up and the assertion of stale and antiquated claims? I cannot perceive; and I am therefore of opinion that a party may protect himself by length of time, from the attempt to charge him as a fraudulent donee. In this case I am satisfied that Huston might, as early as 1800, after he paid the -debt, have instituted his action, either at law or in equity, against the appellees as fraudulent donees, if they were really such, and that of course the lapse of *182 time should be computed from that period. If so, 27 years elapsed before the institution of the present proceeding, which for the first time puts the defendants upon the proof of the fairness of a transaction 87 years old, with the circumstances of which they cannot reasonably be supposed to have any acquaintance. Though the deeds are apparently voluntary upon their face, yet parol evidence would be admissible to prove a valuable consideration to support them and rebut the fraud. Sugden on Vendors, 473, (American edi. of 1836, vol. 2, p. 200;) Chapman v. Emery, Cowp. 278. How, if this might be established by evidence, it may be presumed from lapse of time, which supplies the place of evidence.
"With these views, I am still of opinion to afiirm the decree in the supplemental cause. But some other questions have been pressed upon me, which I waived upon the former hearing as unnecessary to be decided, but which it seems desirable to pronounce upon, as we are not unanimous upon the point which I have disrcussed.
The question as to the effect of the marriage of the-voluntary donees is the first that I shall notice. It has been very satisfactorily treated by my Brother Parker,* and by our former able associate, Judge Carr. They have shewn, that upon principle and authority, the intermarriage with a voluntary donee renders the transaction valid. Their able views will render unnecessary any thing more than a few general remarks on the-subject.
Marriage, from the earliest times, has been considered in law a valuable consideration1! On the part of the-husband it is peculiarly so, as he is responsible for the-debts of the wife. Hence, it is beyond question that if a father makes a gift to his daughter in marriage, the- *183 property given shall forever after be protected against the creditors of the father, how much soever he may have been indebted, provided it was under no specific lien. If, for instance, the slaves in question had been given by Clendenin to his daughters upon their marriage, Huston could have ho pretension to charge the property itself, or them or their husbands in respect of it. The real question then is, whether, if the marriage would protect the gift out and out against a creditor, it will fail of that effect in relation to that partial interest which, in contemplation of law, and by the operation of the statute, is, in case of a voluntary gift, left in the donor for the benefit of creditors ? Upon the reason of the thing, there would seem to be little room for doubt. So long as the whole shall he held to he greater than a part, so long must it he held that marriage with a fraudulent donee must extinguish the creditor’s right to charge the property, if a gift out and out at the time of the marriage would he protected by it. Upon authority the matter seems to have been long and well settled. Thus, in Prodgers v. Langham, 1 Sidd. 138, the father created a trust to raise a fund to support his daughter till marriage, and to portion her if she married one Poulson. She did not marry him, hut another, unacceptable to the father. The father then sold the land, thus charged, to a third person. It was decided that if he had sold before the marriage, the trust in favour of the daughter would have been held void; but that although it was void in its creation as to purchasers, yet as the marriage had taken effect, the first settlement no longer remained voluntary, as it was in its creation, but was upon valuable consideration and unavoidable, since the marriage was an advancement of the daughter, and of him who should he induced to marry her by that provision. This is a leading case, and said in 9 Ves. 193, to have been long considered good law. So in Kirk v. Clark, Prec. in Ch. 275, 3 *184 Bac. Abr. 317, a voluntary settlement on a son, followed by a subsequent marriage, was held to be thereby made good and valid, and it was declared it ought to pe congi(jere¿ as made at the time of the marriage. go in East India Company v. Clavell, Prec. in Ch. 377, 3 Bac. Abr. 315, a voluntary settlement for raising a portion for a daughter, though in its creation invalid, yet was held to be rendered valuable and unavoidable by a subsequent marriage. See also Brown v. Carter, 5 Ves. 862. In Sterry v. Arden, 1 Johns. Ch. R. 261, affirmed unanimously by the court of errors, the cases are reviewed by Chancellor Kent, and he comes to the same conclusion. There the deed to the daughter was voluntary; but it was held that her subsequent mamage “ changed the character of the previous settlement, and placed her in the light of a purchaser for valuable consideration.” Principle and authority thus seem to me to concur in sustaining the proposition that the mamage of the daughters in this case rendered the gifts, if voluntary before marriage, good and unassailable afterwards.
It is said, however, that if the fraudulent donees had sold the slaves before marriage, they would have become personally responsible for the value; and that if marriage is a purchase, they must pari ratione be responsible, as by their act they have placed the property beyond the reach of the creditors: and then it is said the husbands, having taken them cum, onere, are , bound for the value of the property thus slipped from the grasp of the creditors. If this be so, the principle which protects the marital rights is of no value: “it keeps the word of promise to the ear, and breaks it to the hope.” If the property is protected against creditors by the marital rights on the one hand, the husband is made liable to its value on the other. What then does he gain by it ? Of what value is the *185 'institution of these perplexing enquiries, if in every event he must be charged with the debt?
But is the principle such as is contended for? Does the daughter become debtor by the marriage? Is she considered as selling, and the husband as purchasing the property from her? By no means. She is considered as purchasing from her father by the act of marriage. The valuable consideration enures to make that conveyance valuable which before was voluntary. 'The property may not be, from some cause, in the wife’s possession at the time of the marriage. If they ■sue for it, the suit is brought by both, as in Sterry v. Arden. If she dies, her husband must administer, and recover in the character of administrator, as m East India Company v. Clavell, before cited. He, then, is not a purchaser from his wife: she has not parted with her right but by operation of law, and has not therefore incurred any responsibility whatever, for the protection afforded to the property by the marital rights.
Upon the whole, I am of opinion that on this ground also the'supplemental bill was properly dismissed.
Another question has been made as to the power of attorney, and its effect as an equitable mortgage. As to that, I shall only say that as this court seems to have recognized the case of Hunt v. Rousmaniere’s adm'rs, I shall of course bow with deference to its decision. It is, however, in entire conflict with my own opinions.
As to the bond, it clearly does not bind the heirs, and as this is not a bill to marshal assets,, the enquiry as to the real estate was unnecessary and erroneous.
These errors occur in the proceedings in the original cause, which should therefore be herein corrected.
The decree entered by the Court of Appeals was as follows:
*186 “ The court is of opinion that whatever might have been the character, in its origin, of the transfer of the slaves sought to be subjected to the plaintiff’s demand by the supplemental bill, it was rendered good and available against creditors and purchasers upon the marriage of the daughters, who thereupon were to be considered as purchasers by relation for valuable consideration. The court is therefore of opinion that there was no error in dismissing the supplemental bill; but considering that by the appeal of Huston’s administrator the original proceedings, as well as the supplemental bill, were brought up to this court, and proceeding to examine the same, they are further of opinion that there is error in the said original bill and the proceedings thereupon, in the following particulars : 1st, In considering the power of attorney in the proceedings mentioned, as having the effect of an equitable mortgage, and as creating a charge upon the land; this court being of opinion that the said power, not having been carried into effect in Clendenin’s lifetime, was utterly revoked by his death, and that all the proceedings for subjecting the 3,000 acres of land in Greenbrier to the payment of the plaintiff’s demand were erroneous, and should be set aside, and a reconveyance to the heirs decreed. 2ndly, In directing an account of the real estate; as the bond did not bind the lands, and the bill does not seek to marshal assets. Such an account therefore could avail nothing, and involved the parties in unnecessary costs. Therefore,”1 SO MUCH OF THE DECREE AS DISMISSES THE SUPPLEMENTAL BILL AFFIRMED, AND THE PROCEEDINGS IN THE ORIGINAL CAUSE, SO FAR AS ABOVE DECLARED TO BE ERRONEOUS,. REVERSED, WITH COSTS TO THE APPELLEES AS THE PARTIES SUBSTANTIALLY PREVAILING. AND CAUSE REMANDED BOR FURTHER PROCEEDINGS PURSUANT TO THE FOREGOING. OPINION AND DECREE.

 Judge Parker died before this report was prepared, and his-opinion never came to the reporter’s hands.